EASTERN DIS.
June, 1841.

PAGE
vs.
WESTERN
MARINE & FIRE
INSURANCE CO.

## PAGE vs. WESTERN MARINE AND FIRE INSURANCE COMPANY.

### APPEAL FROM THE COMMERCIAL COURT OF NEW ORLEANS.

The bill of lading is sufficient evidence of ownership, to entitle the shipper to recover the insurance; even against the testimony of witnesses to the contrary.

A fair and *bona fide* sale of damaged property under circumstances that render its shipment to the port of destination impossible, except in a very damaged condition, is the best that can be done for all concerned, and underwriters have no cause of complaint.

This is an action on a policy of insurance taken out of the office of the defendants, by Lambeth & Thompson, in the usual form, declaring on its face to be for the benefit of whom it may concern. It is alleged to cover two cargoes of tobacco, shipped in two flatboats from Big Barren river in Kentucky, by and in the name of the plaintiff, and consigned to the said Lambeth & Thompson, commission merchants in New Orleans. The tobacco is by a memorandum endorsed on the policy, valued at $60 per hogshead. The boats were both sunk and

EASTERN DIS.
June, 1841.

PAGE
vs.
WESTERN
MARINE & FIRE
INSURANCE CO.
the tobacco almost an entire loss, by the accidents and perils
insured against. The masters of the boats made sales under
the necessity of the case, at the place where the property was
damaged, and the plaintiff abandoned to the underwriters as
for a total loss. He now claims the value of 87 hogsheads of
tobacco, at the rate of $60 per hogshead, amounting, together
with expenses incurred in saving the damaged tobacco, to
$5352 50 ; after deducting $454, the sum for which it sold.

The defendants, after admitting the execution of the policy,
pleaded the general issue, and denied specially the legality of
the sales of the damaged tobacco, and every or any liability
whatever.

The case was tried on these pleadings and issues, and sub-
mitted to a jury on the evidence. It turned principally on the
evidence and facts ; all of which are fully stated in the opinion
of this court.

There was a verdict and judgment in favor of the plaintiff,
for $5220 : after an unsuccessful effort to obtain a new trial,
the defendants appealed.

*Jones & Peyton*, for the plaintiff.

*Maybin & Grymes*, for the defendants.

*Morphy, J.* delivered the opinion of the court.

On the 16th of October, 1837, the defendants underwrote a
policy of insurance to Lambeth & Thompson, commission
merchants, on account of whom it may concern, upon tobacco
shipped or to be shipped to the latter, at or from any point or
landing on the Ohio river or its tributaries, to New Orleans,
between the 25th of September, 1837, to the 1st of March,
1838. By a memorandum added to the policy on the 8th of
January following, the valuation on the tobacco insured was,
by consent, raised from fifty to sixty dollars per hogshead.
On the 20th of January, 1838, the plaintiff, a resident of Barren
county, State of Kentucky, shipped from two places on Big
Barren river, a tributary of the Ohio river, two cargoes of

tobacco; the one consisting of sixty-two hogsheads, in the flat-EASTERN DIS.<br>June, 1841.boat Benjamin Franklin, whereof Benjamin Ritchey was master, and the other of twenty-five hogsheads, in the flatboat PAGE<br>vs.Sam Brown, of which John Brown was master; the tobacco WESTERN<br>MARINE & FIREwas consigned to Lambeth & Thompson in New Orleans, with INSURANCE CO.instructions to effect insurance thereon. On their way to the port of destination, the Benjamin Franklin ran against a root or snag concealed under the water, near the mouth of Philips' Branch, in Barren river, and the Sam Brown sprung a leak at a short distance from that place, by which accidents both the boats sunk. The tobacco on board of them, having remained some time under water before it could be withdrawn, was found to be materially damaged; whereupon the masters of these boats, after making their protest and giving due notice by advertisements, proceeded to sell, and did sell at public auction the said tobacco for the benefit of all concerned. Under these circumstances, the plaintiff claims under the aforesaid policy as for a total loss. The defendants deny the facts set forth in plaintiff's petition, or that they be indebted to the plaintiff in any amount whatever. They aver that the sales alleged to have been made, were illegal and pretended; that the flatboat Sam Brown was not seaworthy at the beginning of, nor during the voyage insured; and that the plaintiff has no cause of action whatever against them. The case was laid before a jury who brought in a verdict for the plaintiff in the sum of $5220; a remittitur having been entered for $403, the nett proceeds of the sale of the damaged tobacco. Judgment was rendered accordingly. After failing in an attempt to set aside this verdict and judgment, the defendants appealed.

It is not denied, that these shipments of tobacco to Lambeth & Thompson were covered by the policy sued on, or that an abandonment was made to the Company; but it is said, that plaintiff shares an interest only in four of the hogsheads on board of the Benjamin Franklin; that the balance of the tobacco belonged to a number of other persons, whose names are marked on the hogsheads, and that the plaintiff can recover

EASTERN DIS.
June, 1841.

PAGE
vs.
WESTERN
MARINE & FIRE
INSURANCE CO.

The bill of
lading is suffi-
cient evidence
of ownership to
entitle the ship-
per to recover
the insurance;
even against the
testimony of
witnesses to the
contrary.

only to the extent of his interest. The testimony in the record on this head cannot, in our opinion, outweigh the evidence resulting from the bill of lading, which is in the name of plaintiff. He had the possession, custody and control of the tobacco, coupled with a legal title to the same. It would be strange indeed, that an interest which would give him a right of action for the property as his own, should not be susceptible of being insured. Admitting that the plaintiff had an absolute and entire right of ownership only to four of the hogsheads insured on board of the Benjamin Franklin, yet as trustee or agent of the owners, he had in the balance of the cargo such a qualified interest, as authorized him to protect it by insurance. 2 Phillips, 511–740; 1 Peters, 163; 10 Pickering, 40; 3 Mass., 133; 4 Wendell, 75.

In relation to the necessity of the sale and the seaworthiness of the boats, we think that the evidence preponderates in favor of the plaintiff. A number of witnesses, and among them the builders of these flatboats, declare that they were strong and substantial, and well fitted for the navigation of the Ohio, Barren and Mississippi rivers; that they were provided with an experienced steersman, a sufficient number of hands, &c., with every thing necessary to boats of this description. The circumstance of the springing of a leak in the Sam Brown, shortly after her departure, cannot of itself create a presumption of unseaworthiness, for the witnesses say, that such accidents not unfrequently happen to the best flatboats, and from causes that cannot sometimes be ascertained; but even if such a presumption existed, it must yield to the positive proof given in this case, that the boat was a new one, staunch and seaworthy in every respect. The springing of a leak is surely one of the perils insured against. As to the Benjamin Franklin, she struck against a root or snag concealed under the surface of the water, and sunk in spite of every exertion made to prevent the accident. The tobacco saved from the wreck had remained immersed in the water or floating on its surface between thirty and forty hours; when rescued it was found so

thoroughly saturated with water and damaged, with the excep- <span>EASTERN DIS.<br>June, 1841.</span>
tion of a few hogsheads, as to be considered as almost worth-
less ; all the witnesses, but one, assess the damage at 75 per <span>PAGE<br>vs.</span>
cent. Suitable warehouses and the necessary apparatus for <span>WESTERN<br>MARINE & FIRE</span>
drying and reprizing the tobacco, were not to be procured near <span>INSURANCE CO.</span>
the spot where the accidents happened ; and the witnesses,
even those who thought that the tobacco could have been dried
and reprized, express the opinion that the expenses would
have amounted to more than the damaged tobacco would have
brought in New Orleans. One of them (Foster) says, that the
tobacco was so much damaged, that he would not have ac-
cepted it as a gift.

Under such circumstances a sale was surely, as most of the
witnesses declare, the best thing that could be done for the in-
terest of all parties concerned ; and the evidence shows that
on occasions of this sort, it is the course generally pursued in
that section of the country. No newspapers being published
at a distance less than twenty-five or thirty miles, notices of the <span>A fair and</span>
sale were posted up at different places in the neighborhood dur- <span>bona fide sale<br>of damaged</span>
ing five or six days, and the sale was well attended. Every <span>property under<br>circumstances</span>
thing from the evidence before us appears to have been con- <span>that render its<br>shipment to the</span>
ducted with fairness and with a view to do the best according <span>port of destina-<br>tion impossible,</span>
to the circumstances of the case. That a master may, in case <span>except in a very</span>
of necessity for so doing, sell the ship or cargo damaged, has <span>damaged condi-<br>tion, is the best</span>
never been doubted, but it must be done bona fide for the ben- <span>that can be done<br>for all concern-</span>
efit of all concerned ; as to what is a case of necessity and what <span>ed, and under-<br>writers have no</span>
is not, depends upon the particular circumstances and is a <span>cause of com-<br>plaint.</span>
question of fact to be determined by the jury ; the evidence in
our opinion fully justifies the conclusion to which they have
arrived ; 2 Phillips on Insurance, 315, 327, and 328.

But it is contended that the sale was merely pretended and simu-
lated and that the plaintiff by his acts of interference with the pro-
perty has revoked his abandonment and can now claim only for a
partial loss. There is no proof that the plaintiff became the
purchaser of any portion of the tobacco saved ; but from the
fact that a part of it was bought by his brother-in-law, and that

EASTERN DIS.
June, 1841.

it was afterwards placed under the plaintiff's care to be dried, and re-shipped in two of his boats and one of them having sunk the plaintiff, in whose charge it was, gave orders in relation to it; the inference is drawn, or attempted to be drawn, that the plaintiff was himself the purchaser. This inference has not been adopted by the jury, and we cannot say that they erred. The acts of the plaintiff which are represented and insisted on by the defendants as acts of interference and ownership, sufficient in law to revoke the abandonment, may each and every one of them have been done by him, as the agent of his brother-in-law, the purchaser. The capacity in which he acted was a matter of fact peculiarly within the province of the jury, and we can see nothing in the evidence which makes it our duty to disturb their verdict.

It is therefore ordered, that the judgment of the Commercial Court be affirmed with costs.