CHARLES TREUSCH *vs.* CAROLINE KAMKE, by her husband and next friend, LEOPOLD KAMKE.

*Féme Covert—Personal tort—Joinder of Husband and Wife in the Suit—General demurrer—Act of 1882, ch. 265— Section 4 of Article 45 of the Code.*

A *féme covert* brought suit for a personal tort, by her next friend. It appeared on the face of the declaration that she had a husband living. On general demurrer to the declaration, it was HELD:

1st. That the suit should have been brought in the names of the husband and wife jointly.

2nd. That as the defect appeared upon the face of the declaration, advantage could be taken of it by general demurrer.

3rd. That as the suit was brought before the passage of the Act of 1882, ch. 265, the Act did not apply to it.

4th. That a suit for damages for a personal tort was not included in section 4, of Article 45, of the Code of Public General Laws.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*First Exception* stated in the opinion of the Court.

*Second Exception.*—This exception was taken by the defendant to the rejection of his prayers, nineteen in number, and to the following instructions given by the Court (PHELPS, J.) to the jury:

1. If the jury find that the plaintiff, without negligence on her part, was injured by the falling of the wall of the defendant's house, and that the fall was occasioned by the want of ordinary care or skill in its erection, which rendered the structure unsafe, and that said unsafe condition was known to the defendant, or might by the exercise of

reasonable diligence on his part have become known to him, and that the accident might have been prevented by the exercise of ordinary care and skill on the part of the defendant, then the plaintiff's injury was due to the defendant's negligence, and she is entitled to recover such damages as the jury may think will compensate her for the same.

2. In determining whether the plaintiff's injury was due to the defendant's negligence, which the jury must find affirmatively and by a preponderance of evidence, in order to entitle the plaintiffs to a verdict, the jury may consider the fact of the fall itself, the manner of the fall, the time of the fall, the force and direction of the wind, as well as the construction of the building in point of material and workmanship, and all other facts in evidence which may in their judgment throw light upon the cause of the accident.

3. If the jury find for the plaintiff, they are to consider her health and condition before the injury complained of, as compared with her present condition in consequence thereof, and whether the same is in its nature permanent, and how far, if at all, it is calculated to disable her for those employments for which in the absence of such injury she would have been qualified, and also the physical and mental suffering, if any, to which she was subject by reason of said injury, and to allow her such damages as may in their opinion be a fair and just compensation for said injury.

The verdict and judgment being for the plaintiff, the defendant appealed.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, IRVING, and BRYAN, J.

*John B. Wentz,* for the appellant.

*D. Meredith Reese*, for the appellee.

STONE, J., delivered the opinion of the Court.

This is an action brought by Caroline Kamke against Charles Treusch for a personal tort. The declaration charges that the defendant, Treusch, was possessed of a lot of ground in the City of Baltimore, and that he erected on his lot a warehouse, but that the building was so carelessly, unskilfully, and negligently put up, and with such insufficient and improper materials, that in consequence thereof the building suddenly fell, and in falling seriously injured the plaintiff, Caroline.

The defendant demurred to the declaration, but the demurrer was overruled, and the defendant then pleaded not guilty, and the case was tried by a jury, and the verdict and judgment being against the defendant, he has appealed. The ruling of the Court upon the demurrer is open for review in this Court, as well as the exceptions taken at the trial. There were two exceptions taken at the trial—the first to the admissibility of certain evidence, and the second to the refusal of the Court to grant the instructions asked for by the defendant, as well as to the instructions that were given by the Court. We will first dispose of these exceptions, and afterwards of the demurrer.

The exception as to the admissibility of the evidence is one of trivial importance. The plaintiff had given in evidence that the house had fallen on Sunday morning, and then had proved by Gintling, a carpenter, that he examined the ruins on the Wednesday following, and went on to prove by him the thickness of the walls of the fallen house, and in the course of his examination, Gintling said that a part of the roof had been taken away before he got there; the plaintiff then asked the witness,

"Where was the roof of the building when you arrived there?"

To this question the defendant objected, but the Court overruled the objection, and in so doing committed no error.

The whole object of the testimony of Gintling was to show the cause of the fall of the house. The location and position of the different parts of the *débris* after the accident was proper to go to the jury, and might have enlightened them to some extent as to the cause of the accident. The length of time that had elapsed between the time of the accident and the examination of Gintling, may have weakened the force of the evidence, if there was any particular force in it, but the jury were entitled to know its position, as it might have given them some information, even if but little; the evidence was therefore admissible.

The second exception involves the instructions asked for by the appellant, and which were refused by the Court; and also those actually granted. The appellant offered a number of prayers, nineteen in all; but if the instructions given by the Court stated the whole law of the case correctly, it was all that the appellant could rightfully ask, and it will not be necessary to refer specifically to his rejected prayers; except, perhaps, to one of them. This one prayer of the appellant, and upon which he laid great stress, asked the Court to instruct the jury that there was no legally sufficient evidence before them upon which the plaintiff could recover. This the Court below properly refused to do, as we think there was evidence sufficient to go to the jury. Before the Court will take a case away from the jury, it must be satisfied that the evidence is so light and inconclusive that no rational mind could infer from it the fact sought to be established. The fact of the fall itself was at least *prima facie* evidence of improper construction, and entitled the plaintiff to call upon the defendant to explain it to the satisfaction of a jury.

The declaration, as we have before stated, was for an injury alleged to have been suffered by the plaintiff from the fall of a house of the defendant, which she alleges was

so carelessly and improperly put up, that it in fact was a nuisance, and that its fall was owing to its defective construction.

The defendant, on the other hand, insists that the house was properly built, and with all reasonable care, and that its fall was caused by a severe and unusual storm.

It is evident that the real point at issue, between plaintiff and defendant, was whether *ordinary* care and skill was used in the erection of this building, and that a building that could not stand the usual winds that prevail in this latitude, cannot, in the nature of things, be erected with ordinary care or skill, and the owner is justly liable for the injury that may be occasioned by its fall, provided he knew, or by the exercise of reasonable diligence on his part, might have known of its condition.

But on the other hand, if its fall was due, not to imperfect construction, but to the extraordinary and unusual force of a wind storm, then the owner could not be held to be in fault, and it was the exclusive province of the jury to determine which hypothesis was correct.

All this was plainly and correctly laid down in the several instructions given by the Court. In the second instruction given by the Court, the law was stated, certainly as favorable to the defendant, as the circumstances of the case would, in our judgment, permit, and *he* certainly has no just cause of exception to that instruction.

The third instruction laid down the correct rule for the assessment of the damages, if the jury found for the plaintiff. Her condition before and after the injury, the extent of the injury, and whether the same was permanent or transient, as well as her bodily and mental sufferings, were all proper for the consideration of the jury, and we find no error in the three instructions given by the Court.

We now come to the subject of the demurrer. There is certainly no defect in the declaration in this case that would authorize a reversal, unless it be in the manner in which this suit is brought.

Treusch *vs.* Kamke, &c.

By the common law, an action for the personal injury to the wife must have been brought in the name of both husband and wife. The husband, by virtue of his marital rights, had an interest in the judgment, and if he survived the wife, was entitled to the whole of it. If a suit were brought in the name of the wife alone, when the husband ought to join, if the defect did not appear on the face of the declaration, advantage of it could only be taken by plea in abatement. If, however, the defect did appear upon the face of the declaration, a demurrer would lie.

In the case before us, the suit is brought in the name of the wife, by her next friend, and it does appear from the face of the declaration that she has a husband living. Unless, therefore, she is authorized to bring a suit like the present, by the 4th section of Art. 45, of the Code, or by the Act of 1882, ch. 265, the suit is erroneously brought, and the judgment on the demurrer must be reversed, as the defect, if there be one, is a substantial and not a formal one.

With regard to the Act of 1882, ch. 265, it is enough to say, that this suit was brought before the passage of that Act, and it, therefore, does not apply to this case.

We mean to express no opinion as to the application of the Act of 1882, ch. 265, to suits like the present, if brought *after* the passage of that Act. We prefer to decide that question when it is directly presented, if it ever be, and argued before us. All that we mean now to decide is, that the Act does not apply to suits like the present brought *before* its passage.

The 4th section of Art. 45, of the Code, is restricted by its terms to the "recovery, security, or protection of *the property* of the wife." The first section of that Article declares that all property belonging to the wife, at the time of her marriage, and all that she might subsequently receive "by purchase, gift, grant, demise, bequest, or in a course of distribution," should be protected, &c. The

Treusch *vs.* Kamke, &c.

*property* which the 4th section of that Article authorizes her to sue for the recovery, security, or protection of, by next friend, is the property she acquires by the first section. But by no fair rule of construction can such property be held to include damages for a personal wrong.

Such damages are certainly not received, either by "purchase, gift, grant, demise, bequest, or in a course of distribution." They are left as they stood at common law, and were not considered or included in Art. 45 of the Code. As we have seen, by the common law, a husband had a substantial interest in suits for the personal wrongs done the wife, and as the Article of the Code referred to does not deprive him of such interest, it follows that the suit in this case should have been brought in the joint names of husband and wife, and that there was error in overruling the demurrer, and the judgment must therefore be reversed, and a new trial awarded, that the plaintiff may have an opportunity to amend her writ and declaration by making the husband a co-plaintiff.

The legislation in this State relative to husband and wife, seems to us to be in rather an unsatisfactory condition. In some respects the wife is treated as a *féme sole,* but not in all. The undoubted tendency of all the recent legislation has been to increase the rights and responsibilities of the wife, and to place her more and more on the footing of a *féme sole.* But the Legislature has chosen to proceed, step by step, in that direction. We do not feel authorized to advance faster than it does. However unwilling we may be to disturb a verdict in a case like the one before us, which appears by the record to have been fully and fairly tried, still, as the common law gave the husband a substantial interest in such a case, we cannot deprive him of it without legislative authority.

*Judgment reversed, and*
*new trial awarded.*

(Decided 11th March, 1885.)