Mr. Justice Johnson delivered
 

 the opinion of the Court—
 

 This cause comes up from the Circuit Court, for the Mary-, land District, on a difference of opinion.
 

 The suit below; - was instituted on two policies .of insurance, the one .for 6000 dollars, the. other for 2000 dollars, upon the brig Columbia,'Dániel-Fitch master,, at and from the Spanish island of Porto Rico to Baltimore,
 
 for whom it may concern.
 
 Buck & • Hedrick were the agents’ of. Fitch, and the policies were made ;in .their name. The first policy was executed on the 6th of May, 1.822, and stands unimpeached by any circumstances occurring at the. time of its execution.’ But, when application was made for the. second policy, which was on the 24th.of May, the agents laid before,the underwriters á letter, dated Ponee, April 27th 1822, to this effect-:—
 

 Messrs. Buck & Hedrick—
 

 . “I wrote, you a few days ago by the brig Ospray, Captain Perkins, direct’for Baltimore, requesting you to have-insurance
 
 doné for
 
 wieon the brig Columbia, arid'her cargb,. owned ánd " commanded by me, to sail from- this for Baltimore,, about 5th to 10th of May, with a cargó of sugar. When I wrote you hy the.Ospray,, I could not say what'amount of cargo to have
 
 insured fojr me,
 
 I now think I shall have on board about 130,000 pounds, . Valued, at 8000 dollars, which, airiotiht I wish you to. have
 
 insured for me,’’
 
 &c.
 

 Ther-gsthas no material bearing upon the cauée. On the back of this letter. was. written. the. following inquiry:
 

 
 *159
 
 « What-will,2000 dollars he insured ait, agreeable to within letter, on cargo, of which yoii have 6000 dollars insured some .time since ? Bijok &' Hedrick.”
 

 The-vessel . and' cargo were totally lost by-the perils of the sea;.;and the interest proved at the trial’, consisted-.of-ahove 200Q dollars, the property .of Fitch,' and aboye- 6000 dollars,' the property of G. Medina, a Spanish subject, of P.ortoRico,-at that time affected wit-h the character of-a belligérent.
 

 • The’ whole cargo was consigned'to Daniel Fitch, and- documented as his — -Medina himself being-on board,; on the voyage.
 

 - The order-'for-.insurance, on;-Which the policy of 6tn May was effected, was in the following words: Insurance is wasted' against all risks,;
 
 for account of wkoyn it' may coricem,
 
 30t)0 dollars; on thebrig 'Columbia,' Daniel Fitch-mastery apd on' cargo, 6000 dollars, as -interest may appear; at and from Ponce* Porto Rico, to - Baltimore'; a letter from -Captain Fitch,.'dated 19th April, says, he-expects to. añil/about 5th tb 10th.. of May — that the .brig is iff good older, perfectly tight and seat worthy., What premium ? -
 

 Both policiés, it appears, were.‘done at a premium of Tj, apd on neither occasion v/as the letter of -the - 19th April called'for- by the", office', nor .was any warranty or representa1 tion of any'kind-made or .asked, fór, respecting-the cargo; beyond what was voluntarily made, Uhd has been-Stated.
 

 The first-instruction on ■which' the Court below divided,' was prayed for by the plaintiffs, in, these words:.
 

 ^‘ That as tfie policies of insurance in this case purport tb insure the plaintiffs
 
 “fot whom.it might concern,”
 
 they are not bound to prove, that at the time of effecting the iñsuráhce* órany other time, , they disclosed to the defendants thát Spanish properly yvas intended to be[ covered by. the insuranceand that -in policies of such- description, there can be*no,undue concealment as'to . the parties interested in-the property.to be insured-.
 

 ■Dangerous as it-always’ is, in- a-Coiirt of Justice, to generalize in the propositions-whiph it decides, it is peculiarly so, in questions arising on policies of insurance.
 

 The’present proposition is obviously couched in-terms tori general to admit of án answer in-the affirmative, without restriction oi; modification.. And as Courts of Justice are;ridt bound ' to modify or fashion the instructions moved;for by counsel, spas, to bring them -within the rulés, of law, if-this cause had come, up on a writ of error to the judgment,of the Court, below, for refusing,the instruction as prayéd; it would be difficult to say, that in the trims in which it is preséntéd, the Court was bound tó give this-instruction..
 

 1 To affirm,That dn policies of such, description, there can be no undue concealment as to the parties interested in the
 
 *160
 
 .property to be insured,” is.obviously, going- much .too far; since the. underwriter has an 'unquestionable right to be informed,. if he makes inquiry — the assured may be .'silent, it is true,.if he. will, and let the premium be. charged accordingly —but if the inquiry then made should.be responded to, with information Contrary to- the verity of the' case, this obviously • gives a.conventional signification to the terms of the policy; which may differ materially .from the known and received' signification in ordinary Cases., tie, for..instance, who. should insure
 
 ‘■’■for. wham it may
 
 concern”.'under an express assurance, that there is-no, belligerent, interest in the cargoy could not, upon any principle,, be held to have made assurance- upon belligerent interest.'
 

 ■ This is no more than the ipplioation of- the general principle, that insurance- is. a. contract of .good- faith, and is. void, whenever imposition is practised.
 

 That a policy ‘
 
 ‘for■whom it. may -concern,
 
 ’’ will, in ordinary' .case$,..cover-belligerent property,, has been' fully conceded in argument. Nor is-it contested,-that previous representation will be sunk or absorbed; or-put .out .of the. Contract,, where the-policy is executed- in obvious inconsistency. w.ith‘ those representations-. ■ But' the 'ground here- insisted, on for defendants, is, that the letter of April 27th,. was a representation that the wliole cargo was" Captain Fitch’s, and that it. thereby- operated as an imposition upon the underwriters, and as such, aVoids both ,policies;-or that it affixes ,a conventional meaning to-the ohrase, in .these policies; Which limits its ordinary import.
 

 Is there any thipg. in the■ casé sufficient-to. except these policies from the ordinary-import and effect of.the phrase F for Whom it1 may concern
 
 !”■
 

 We.are of opinion-there,is -not.
 

 Whatever turn; of- expression may be given to the question, or in whatever aspect it may be-presented, it.is obviously, at last, .nq-..more than- the', simple question,'have these under,-writers been entrapped, of iiftposed upon, or .seduced into a contract, of the force, extent, or.incidents of which,.a competent understanding cannot be imputed, to- them?..
 

 A knowledge of the state of.tire world, of the. allegiance 'of particular countries, of- the risks and .embarrassments affecting their commerce, of the course and incideiits.of the trade on which they insure, and the established import of the terms, used'in their contract; must necessarily be imputed, to underwriters. According to a'distinguished English jurist, Lord Mansfield, in Pelly
 
 vs.
 
 The Royal Exchange, &c. (1
 
 Bur.
 
 341,) “the insurer, at the time of underwriting, hás under h.is' consideration'the nature of the voyage, and. the usualmanner. of conducting it; And What is usually done bysuch-a ship, with such a. cargo, ihs.uch a voyage. is
 
 *161
 
 ■understood to be referred to'by, every policy. Hence, when a neutral, carrying on a trade from a belligerent to a neutral country, asks for insurance “for whom it may concern,” it is an awakening circumstance. No Underwriter can be ignorant of the practice of neutrals to cover belligerent property, under neutral names, or of the precautions ordinarily resorted to, that the cover may escápe detection. The cloak must be thrown over the whole transaction, and. in no part is it more necessary, than in the correspondence by other vessels, so often overhauled by an . enemy, for the very purpose of detecting covers on other cargoes. Letters, thus intercepted, have often been the ground-work of condemnation in Admiralty Courts; and underwriters, to whom ■ the, extension of trade is always beneficial, must and do connive at the practice in silence. They ask no questions, propose their premiums, and1 the contract is as. well understood, as the-most thorough explanation can make it.
 

 There is nothing in the letter, in evidence, calculated to mislead .an insurer .of ordinary-vigilance, but what was fully expláinéd away, by concomitant circumstances. It is true, that in the letter Fitch writes, to have insurance done
 
 for him,
 
 on “the.brig Columbia arid' her cargo;” that he cannot say, what amount of cargo to have- irsUred./i)!'
 
 him.
 
 Yet, when the offer was submitted, it-was'endorsed on .the back of this letter, and expressly declared to be upon the same cargo, of “ which you have 6,000 dollars insured,.-some tirite since.”
 

 The insurance alluded to,, was;'made ‘f for whom it may concern,” and this second policy is expressed in the same terms.
 

 Here, then, was a neutral, professing.himself to be owner of a cargo, consisting of produce .of the hostile .islánd, on a voyage, having for its object, to find a market for. that produce — most unnecessarily, if himself the réal owner, or if there were no owners, but neutrals — most unwisely,' subjecting himself, or them, to ari irferease of premium, which could not but result from such an offer:
 

 . This \yas a circumstance calculated to induce inquiry. The defendants had a right to make what- inquiries they pleased, as.to the real character of the cargó; and if theydid not make-those inquiries, the law imputes to theip the use of the phrase, “for whom it may concern,” in its ordinary effect ánd signification. We are*-therefore,-of opinion,
 
 thai this instruction, if s.o.. modified as to be confined to the ■case ■ before the Court,
 
 ought to have been given. - . ' '
 

 . The
 
 second
 
 prayer, amounting'only to an affirmance of the general proposition, as relates to.-the policy of the 6th May, we are of opinion, ought to have been given. .
 

 The
 
 third
 
 prayer, having the same'bearing.upon the policv
 
 *162
 
 of the.24th May, we are-of opinion, for the reasons expressed in the first, prayer, ought also to have been given.
 

 'By the
 
 fifth-
 
 prayer, the plaintiffs ask-of the Court to instruct the .jury, “ That if the said Daniel Fitch, at the time of said policies, was..legal and equitable owner ■ of part of the cargo insured; and'the legal, though not. equitable,owner of the residue, policies, “for whom'it may concern,” do cover the entire cargo; and said Fitch is competent, in law, to recover the whole, in his own name — ‘though the belligerent cha-, racter of a part of. said cargo, was not disclosed, "at the time of effecting said-policies.”
 

 The language in which this .prayer is couched, obviously imports two. propositions; 1st.'That,a policy, “for whom it may concern,” will cover the whole cargo — though the assured had-only the
 
 legal,
 
 without
 
 the-equitable
 
 interest in part, and a legal and. equitable.interest in the residue; and, 2d: ThatDa-
 
 niel'Fitch
 
 is competent, in law, to recover the whole, in his owii name — though the belligerent character of part was not disclosed, when the policies were executed.
 

 . It is a very, great objection 'to-this prayer, that the language used, is too general and abstracted;-and not adapted'to the case, with that studied precision which the law requires-r-therc-by rendering it scarcely possible for the Court to m'eet it .with a simple, positive, or. affirmative answer.
 

 To the
 
 first
 
 of the two propositions,it.may be.further objected, that- it is difficult to perceive, how it came to be. introduced, into the cause. Abstracted from the effect of belligerent interest in the cargo, the.defence admits, that the policy covers all other .interests, whether legal, or equitable.
 

 ■ And, with regard .to the
 
 second,
 
 it is not easy to perceive, -why the Courtshould be called upon, to charge the jury, that
 
 .Daniel Fitch
 
 was competent, in law, to recover the whole in his own' name, when the suit is, In fact,, prosecuted iti the name of the agents; and they count upon the interests of both-Medina and Fitch.
 

 But the cause- has been argued, upon the assumption, that this, prayer brings up the -question of
 
 insurable interest,
 
 in
 
 Fitch,
 
 by whose instructions, Buck & Hedrick éffected this insurance; and, as’i( is better to.follow out-the concessions of counsel, than to let the cause come up here again, upon this point, we will consider that"question.-as being raised by this,, in, conn exion with the other prayers.
 

 And here,.we think, the facts make up a
 
 clear-case
 
 of in-.-suráble interest. The only doubt, probably, arises from one of the most prolific' ground's 'of uncertainty on many subjects, viz., the use of terms, originally unaptly selected,, but now rendered legitimate,- by-use. - It is only necessary-to inspect a few cases
 
 *163
 
 oii this doctrine," to be satisfied, that the term- interest, as used in application "to the right'to insure, doés not' necessarily imply property, in the subject of insurance.
 

 . In the case of Crawford et al.
 
 vs.
 
 Hunter, 8
 
 D. &. E.
 
 13, the plaintiffs were commissioners appointed by the Crown, under an Act of Parliament,’ to superintend the transportation, See. of Dutch vessels,' seized in time of peace, without any present designation for whom- — whether to be held in trust, for the original owners, the Crown, or the captor. The-vessel had been carried into St; Helena; and the policy wáseffected, with a view to her safe transportation, from that island, to England; and, after much consideration, it was adjudged, that this was a góod'insurable interest, .and the plain tiffs recovered.
 

 The samépoint was afterwards decided, in Lucena
 
 vs.
 
 Crawford et al. 3
 
 Bos. § Pul.
 
 75, on a writ.of error, to the Exchequer, after three arguments, and great deliberation — -yet the seizures’ •were made before declaration of. war; and the interest of the plaintiffs, amounted to nothing but a power over the subject, with a claim
 
 by.quantum meruit,-
 
 for their services.
 

 Putting, down the present case, therefore, to its lowest grade of insurable interest, it' is equal to that of the" plaintiffs, in the two cases alluded to- — for Daniel. Fitch'was, at least, the agent ór trustee of Medina, .to"transport his goods from Porto'Rico, to a market, and to secure them from the chances of capture • and losá. >•
 

 But this' case is stronger than the English cases cited; for, by .the act óf Medina himself, Fitch was exhibited to the world, clothed with all the national-documents, which evidence an absolute property; and; for many purposes, the real owner would have been estopped to. deny it.
 

 We will instance the. payment of duties’; for which, either as owner, or consignee, our laws held Fitch absolutely liable. We have, therefore, no doubt of the sufficiency of the insurable interest, in this case..
 

 The
 
 last
 
 prayer,, on which the-Court bélow divided, is in these terms'
 

 “ That the Court instruct the jury, that the letter of'the 27th April 1822, with the order written thereon, do not; in "law, amount to a representation; that the property to be insured, was the sole property of Daniel'Fitch; or that the whole,.or any part thereof, was not‘belligerent.5’
 

 We have already expressed our opinion, on the proposition here presented.- It is to be regretted, that this prayer also, is so defective, in precision. But, it was obviously intended, and-so argued, to be. confined to-a representation,
 
 which would vitiate the policy.
 
 With relation, tó _the
 
 'first
 
 policy, we are all-of opinion; that it was-"unaffected..by .the letter, specified;- and,
 
 *164
 
 with regard.to the
 
 second
 
 policy, whatever might have been the effect of this
 
 letter,
 
 had it stood"
 
 alone
 
 — yet, taken in coin nexiori with the concomitant circumstances, it was not fatal to the contract.
 

 On
 
 this point,
 
 a majority of the Court would be. understood to express the opinion, that this letter
 
 connected with the order endorsed upon it,
 
 the previous insurance referred to, and, considered in relation to the state of the. world, and the nature, character, and ordinary conduct of the voyage insured, was not such a representation, as,
 
 per se,
 
 vitiated the policy.
 

 And this opinion will be certified tá.the Court below.
 

 This cause came on, &c., on consideration whereof, This Court is of opinion — l. That as the policies of insurance in this cause, purport to insure the plaintiffs “for whom it may concern,” they are not bound to prove, that, at the time of effecting the said insurance,'or any other time, they disclosed to the defendant that Spanish property was intended to be covered by the said insurance, unless' inquiries- on the subject were propounded by the insurer, prior to the ins irance. 2. That if the jury believe the policy of the 6th of May 1822, was founded on the order of the same date, the said policy being “for whom it may concern,” does cover belligerent,.as well as neutral interest. 3. That if the jury believe, that the policy dated 24th of May 1822, wras founded on the letter of the 27th of April 1822, and the order written thereon, the policy being, “for whom it may concern,” does cover neutral, as well as belligerent property. 4. .That if the said Daniel Fitch, at the time of the date' of the said policies, was legal and equitable owner of part of the cargo insured, and .legal, though not equitable owner of the residue; the policies being “for whom it may-concern,” do cover the entire cárgo; and that the said Fitch had a good insurable interest in the whole cargo.; and the plaintiffs, as his agents, are competent to recover the .whole sum insured thereon,, on proof of such legal and equitatable interest in the said Fitch. 5, That the letter of the 27th of April 1824, whatever might be its effect if taken alone, yet", takeh in connexion with the endorsement thereon, with the previous policy to which it refers, the actual state of the ■ world, &c., and the nature of such transactions, is not such a representation as vitiates the policy. v All which is ordered and adjudged by this Court, to. be certified to the said Circuit Court.