## PHŒNIX INSURANCE COMPANY *v.* HAMILTON.

1. Insurance may be effected in the name of a nominal partnership where the business is carried on by and for the use of one of the partners; especially when the property insured (grain) is held by the parties insured on commission only, and in the policy is described " as held by them in trust or on commission, or sold and not delivered "

2. In case of an insurance thus effected, where no representations are made with regard to the persons who compose the firm, there is no misrepresentation on that subject which avoids the policy.

3. And where the firm has no actual care or custody of the property insured (grain), but so far as regards its preservation from fire, it is entirely in the control of the other parties, and is so understood to be by the company making the insurance; the omission to inform the insurance company of an agreement of dissolution previously made cannot be considered a concealment which will avoid the policy.

ERROR to the Circuit Court for the Northern District of Ohio; the case being thus:

Hamilton and Cook were partners in the grain commis-

---

* White *v.* Fox, 22 Maine, 341; State *v.* Bradshaw, 10 Iredell, 232.

sion business, at Toledo, Ohio, and kept their consignments of grain in store in an elevator at that place belonging to the Michigan Southern Railroad Company, whose servants had the entire charge and care of it. Hamilton retired from the firm in July, 1867, but no notice of the dissolution was given, and by common agreement Cook was allowed to carry on the business in the partnership name until the end of the year. During this term insurance to the amount of $10,000 was effected with the Phœnix Insurance Company of Brooklyn, through their agent, in the name of the firm, Hamilton & Cook, against loss or damage by fire on the "grain in store, their own, or held by them in trust or on commission, or sold and not delivered," this being the usual method of taking insurance among commission merchants in Toledo. A loss occurred on the 21st of December, whilst the policy was running; and the insurance company declining to pay it, Hamilton & Cook sued them. The defence set up was:

1st. Want of insurable interest in Hamilton; and,

2d. Misrepresentation and concealment with regard to the interest.

The plaintiffs, on the trial, waived any claim for grain belonging to themselves individually, and asked a verdict but for the value of the grain which was received on commission; asking to recover this amount for the use and benefit of the owners.

At the request of the plaintiffs' counsel, the court charged that if no representations were made with regard to the individuals who composed the firm of Hamilton & Cook, there was no misrepresentation which could avoid the policy; and that if Hamilton & Cook had no actual care or custody of the grain, but that so far as regarded its preservation from fire, it was entirely in the control of the railroad company, and so understood by the company's agent when the policy was effected, the omission to inform the defendant of the agreement of dissolution could not be considered a concealment which would avoid the policy. Verdict and judgment

went accordingly for the plaintiffs, and the case now came here on exceptions to the charge of the court.

*Mr. A. C. Bradley, for the insurance company, plaintiff in error :*

1. Cook, alone, at the date of the policy and of the fire, *held* the grain in question in trust or on commission. He alone was the bailee, and alone had an insurable interest. Hamilton had no custody, was no bailee, and had no insurable interest. No action, therefore, can be maintained; not a joint action, because the interest was sole, nor a sole action, because the policy was joint.

It is true, indeed, that a nominal partner is sometimes regarded as a real one. But he is only so regarded adversely and to subject him to the obligations of a partner. And this is but right. When a partner retires from a firm, still keeping his name before the public, he can mean nothing but to give to the firm a credit which it does not deserve. Here, Hamilton, whose name doubtless made the firm attractive, withdraws; leaving his name in order that business might be drawn to Cook. This was a deception. Such an act may subject a person to the liabilities of a partner; but surely should not give him a partner's benefits and advantages.

2. The policy was void for fraud. Hamilton and Cook *had* been partners under their joint names, and the firm name continued to be used by each of them from the time of the dissolution till the time of insurance, and afterwards. Every such use of that name was a representation that both persons still composed that firm. Such representation was untrue and of a material matter. Had Cook been alone held out to the world less insurance would have been needed. It was obviously Hamilton's name which made the firm attractive and brought business to it. Indeed, but for the *prestige* which Hamilton's name gave the firm, it does not appear that Cook would have had any business or needed any insurance. Then, again, if Hamilton, in addition to the name, had felt the care and exercised the natural

vigilance of a partner, he might have prevented the destruction of the building. At all events, every untruth uttered with an intent to deceive others for the benefit of the party uttering it, or the benefit of his friends, is a fraud on all parties deceived. Here the company's agent issued the policy believing both Hamilton and Cook to be partners. They so represented themselves; herein committing a fraud on the company. That fraud vitiates the policy.

*Mr. P. Phillips (a brief of Messrs. Waites, Bissell, and Gorill being filed), contra.*

Mr. Justice BRADLEY delivered the opinion of the court.

The principal question is whether insurance can be effected in the name of a nominal partnership where the business is carried on by and for the use of one of the partners.

Hamilton was a nominal partner, held out to the world as a member of the firm by his own consent, and affected with every liability of a partner—to consignors, creditors, and all persons dealing with the concern. The plaintiffs contended that this was a sufficient interest to support the policy, at least, in a commission business where insurance was effected for the benefit of the real owners of the goods. It is objected that a nominal partner is only held such, adversely, for the purpose of subjecting him to liability as a partner, and not for the purpose of giving him the benefits and advantages of a partner. But whilst this is generally true, the interest of a nominal partner in the liabilities of the firm is such as should entitle him, in the absence of any attempt to defraud, to join with the other members of the firm in effecting insurance on the property of the concern. As Chief Justice Jones remarked in *De Forest* v. *Fulton Insurance Co.,*\* " It does not always require either the legal title or beneficial interest in the property to entitle a party otherwise connected with it to effect a valid insurance upon it. A carrier may insure goods he contracts to convey, yet he has neither the

---

\* 1 Hall, 110.

legal title nor the beneficial interest in them, but he is responsible for their loss."

But the case of a nominal partnership carried on for the benefit of one or more members of the firm seems to be still stronger. For it may be said that the legal interest in the business is in the firm, whilst the beneficial interest is in the member or members for whose use it is carried on. In the case before us, as to all the world except themselves, the legal interest of the business was in the firm of Hamilton & Cook, the beneficial interest in Cook alone. And as it is well settled that a trustee or agent may insure the property held in that capacity for the benefit of all concerned, there seems to be no valid reason why persons constituting a nominal partnership should not be competent to effect insurance as well as transact the other business in the partnership name. In this case the intimate connection of Hamilton with the business, and the fact that as between him and the consignors of the grain insured, the railroad company with whom it was stored, and all other persons dealing with it, he was actually a partner, and incurred all the responsibility and risk attaching to that relation, constituted, in our judgment, a sufficient basis of interest for effecting insurance in the name of the firm. The doctrine, established by a number of cases, that nominal partners are proper plaintiffs, as well as proper defendants, in actions by and against the firm, lends support to this view.*

The case before us is an especially strong one, from the fact that the policy was effected mainly for the benefit of the owners of grain held by Hamilton & Cook on commission. The action was prosecuted solely for their benefit. The plaintiffs, on the trial, expressly waived any claim for grain belonging to themselves, individually, and asked a verdict only for the value of the grain which was received on commission, claiming to recover this amount for the use and

---

* See Parsons on Partnership, 134; Story on Partnership, §§ 241, 242; 1 Smith's Leading Cases, 1190.

benefit of the owners. The liberality with which policies of this character, issued to trustees and agents for the benefit of parties really interested, are sustained by the courts, is stated and illustrated in the case of *The Insurance Company v. Chase*,* decided by this court in December Term, 1866. As looking in the same direction, we may refer to the cases in New York which decide that a sale by a retiring partner to his copartners of his interest in the firm, is not a breach of the condition that the policy shall be void if the property is conveyed without the consent of the insurance company.†

The other ground of defence was, that there was misrepresentation and concealment, as to the interest, which vitiated the policy. It is laid down by this court in *The Columbian Ins. Co.* v. *Lawrence*,‡ that an applicant for insurance is bound to fair dealing with the underwriters, and, in his representations, should omit nothing which it is material for them to know; nothing which would probably influence the mind of the underwriter in forming or declining the contract. This doctrine is repeated in several subsequent cases, and is undoubtedly the well-established law. But its application will depend upon the circumstances of each case. Generally speaking it is undoubtedly true that any misrepresentation with regard to the ownership of the property insured will suffice to vitiate the policy. But policies are constantly applied for and granted on general stocks of goods, held in trust or on consignment for numerous and unknown parties. In such cases it is not expected, nor would it be possible, that the insurers should be informed as to the ownership. They are content to insure for the benefit of whom it may concern. Of course, an omission to disclose the ownership in such cases cannot be regarded as an improper concealment. In some cases it is important to the insurers to know who is interested in the property, in order that they may form a judgment as to the probable

---

* 5 Wallace, 509.

† See Hoffman v. Ætna Insurance Company, 32 New York, 405, and cases there reviewed

‡ 2 Peters, 49.

care which will be bestowed in its custody and preservation. In other cases this knowledge may be a matter of little importance. In the case before us the grain insured was in the sole custody and care of the railroad company, and the insurers were little concerned, as, in fact, their agent made no inquiry, who were the owners or interested therein; and no representation was made on the subject, farther than to make the application in the name of Hamilton & Cook, and to ask for a general insurance on the grain in the elevator, whether their own, or held by them in trust, or on commission, &c. Under the circumstances of the case we do not see that anything material for the insurers to know, or that would have had a bearing on taking the risk or fixing the premium, was concealed or withheld. On this subject the court, at the request of the plaintiffs' counsel, charged the jury that if no representations were made with regard to the individuals who composed the firm of Hamilton & Cook, there was no misrepresentation which could avoid the policy, and that if Hamilton & Cook had no actual care or custody of the grain, but that so far as regards its preservation from fire, it was entirely in the control of the railroad company, and so understood by the defendant's agent when the policy was effected, the omission to notify the defendant of the agreement of dissolution could not be considered a concealment which would avoid the policy. Under the circumstances of the case, we do not think there was any error in this charge.

JUDGMENT AFFIRMED.

Mr. Justice CLIFFORD dissented.