(Decided 11th January, 1894.)

Levi Z. Condon *vs.* Jane Sprigg and Horace Sprigg.

*Pleading—Amendment of Declaration—Negligence—Liability*
*—Nuisance.*

A declaration may be amended by striking out the name of the plaintiff suing as next friend of his wife, the person in interest, and making him as husband, joint plaintiff with his wife, although the writ is not amended.

H. conveyed to the defendant without his knowledge, two lots, and placed the deed for the same on record, without his consent. Subsequently H. having sold one of the lots, applied to the defendant to execute a deed for the same to the purchaser, which he did, and therein acknowledged the receipt of the purchase money, and warranted specially the property granted. The defendant claimed that the first intimation he had of the two lots being conveyed to him was when H. requested him to execute a deed, and that he immediately requested him to convey the lots to somebody else, as he objected to have them stand in his name. The defendant testified, that when he executed the first deed, he supposed it included both lots, and that H. told him it did, and he never knew to the contrary until he was sued by the plaintiff. H. testified that he told the defendant the deed conveyed only one lot. The defendant was a man of large bus-

Condon *vs.* Sprigg.

iness experience, especially in the purchase and sale of real estate. The second deed being for the premises where the plaintiff fell and was injured, was not executed by the defendant until after the occurrence. HELD:

That the defendant was chargeable with liability for the injury occasioned by the dangerous condition of the premises, of which he was the owner, he having failed to take prompt steps to divest himself of the title upon learning that it had been conveyed to him.

An area, twelve or fourteen feet long, two feet seven inches wide, and twelve or fourteen inches deep, in front of a dwelling-house on a public street, without fence or gate to prevent any one falling therein, is a nuisance.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*First Exception*, taken to the leave given by the Court to amend the declaration, is stated in the opinion of this Court.

*Second Exception.*—The plaintiff offered five prayers, the fifth of which only, as follows, need be reported:

5. That if the jury find that the plaintiff, Jane Sprigg, was lawfully passing along the footway or pavement on Whatcoat street, in the City of Baltimore, and using reasonable care and caution, and fell into an area or excavation in said footway or pavement in front of a certain house on said street, and that the defendant was the owner of said house, and that said area or excavation was put there for the purpose of giving light to the basement of said house and an entrance from the street into said basement, and was open and unprotected, and the said plaintiff suffered injury therefrom, then their verdict should be for the plaintiff; and in assessing the damage they are to consider the condition of the plaintiff before the injury, as compared with her present condition in consequence of said injury, and whether the

said injury is in its nature permanent, and how far it is calculated to disable the plaintiff from engaging in those employments and pursuits for which, in the absence of said injury, she would have been qualified, and also the physical and mental suffering to which she was subjected by reason of the said injury, and to allow such damages as in their opinion will be a fair and just compensation for the injury which the plaintiff has thus sustained.

The defendant asked for the following instructions:

1. That there is not sufficient evidence in this case, legally, to show that the accident complained of was caused by any act or neglect of the defendant Condon, or to show such ownership, occupation, control or possession of the premises in the declaration mentioned, as would make him legally responsible for said accident. And the verdict of the jury must be for the defendant.

2. If the jury find that the witness Haines put the property mentioned in the deed from Holland to the defendant, in the name of him, the defendant, without his consent, and that he never assented to or accepted said deed, nor accepted said conveyance to him, and that he executed the two other deeds described in the evidence *only* for the purpose of disclaiming said property in said deeds described and getting the same out of his name, then their verdict ought to be for defendant.

3. If the jury believe the evidence of Condon and of Haines, offered in the case, then there is no sufficient evidence on the part of the plaintiffs legally sufficient to show that the accident complained of was caused by any act or neglect of the defendant, or to show such ownership, occupation, control or possession of the premises in the declaration mentioned as would make him legally responsible for said accident, and their verdict ought to be for the defendant.

Condon *vs.* Sprigg.

The Court (RITCHIE, J.,) rejected the plaintiffs' first, second, third, and fourth prayers, and granted their fifth prayer in connection with and subject to the defendant's second prayer; and rejected the first and third prayers of the defendant, and granted his second prayer. The defendant excepted. The jury gave a verdict for the plaintiffs for $1,900, and judgment was entered accordingly. The defendant appealed.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, ROBERTS, McSHERRY, and BRISCOE, J.

*Julian I. Alexander,* (with whom was *Joseph C. France,* on the brief,) for the appellant.

*H. P. Jordan,* and *R. E. Jordan,* for the appellees.

ROBERTS, J., delivered the opinion of the Court.

This is an action on the case for the recovery of damages for a nuisance. The suit was originally brought in the name of Jane Sprigg, by Horace Sprigg, her next friend. Subsequently the plaintiff moved to amend the declaration by striking out the name of "Horace Sprigg as next friend," and to make Horace Sprigg, the husband of Jane, a joint plaintiff with her. Leave was granted, the amendment made, and the defendant excepted. It is contended by the defendant, that the amendment was improperly allowed, because the writ was not also amended, and that, under the present state of the pleadings, the action cannot be maintained.

In this view we do not concur, and think the question has been conclusively determined by this Court in *Treusch vs. Kamke,* 63 *Md.,* 282. The writ has accomplished its purpose, when the parties are before this Court. The plaintiffs are voluntarily in Court, and the defendant in obedience to the mandate of the Court, is

required to appear. If, for the purpose of the plaintiffs'
case, it had been requisite to change the form of action,
then an amendment of the writ might have been neces-
sary. We find no error in the Court's action in making
the amendment. There was no oral argument in this
Court on the demurrer to the equitable plea, nor do we
find any reference to it in the appellant's brief, we there-
fore infer that the question is not before us for our con-
sideration.

The facts of this case are, that the plaintiff, Jane
Sprigg, sustained serious injury whilst passing along
the west side of Whatcoat street, a public thoroughfare
of the City of Baltimore, by falling into an area or open-
ing, in front of a dwelling-house on said street. This
area is used as an entrance to the basement of the dwell-
ing, which has a front of twelve or fourteen feet. This
area is about twelve or fourteen inches in depth, and
extends the full length of the front of the house, and
has a uniform width of two feet and seven inches to the
coping. The pavement is eight feet and two inches in
width from the house front to the gutter. The night
on which the accident happened was so dark that the
plaintiff could not see the pavement at her feet. She
was not aware of the existence of the opening, nor did
she know that there was any basement to the house.
The area was without fence or gate to prevent any one
falling therein.

The chief controversy in this case arises out of the
conflict of testimony as to the ownership of the prop-
erty. At the time of the accident the Land Records of
Baltimore City disclosed the fact that the paper title to
the premises was in the defendant. It appears from the
testimony in the record that the premises had been con-
veyed to the defendant, before the happening of the acci-
dent, without his knowledge, and the deeds for the same
placed upon the Land Records without his consent by an

office companion of the defendant, a Mr. Haines. Subsequently, Haines having sold one of the lots, applied to the defendant to execute a deed for the same to the purchaser, which he did, and in which he acknowledged the receipt of the sum of six hundred dollars, the whole purchase money, and therein warranted specially the property granted with such further assurances as might be requisite. The defendant claims that the first intimation he had of the two lots being conveyed to him, was when Haines requested him to execute a deed, and that he immediately requested him to convey the lots to somebody else, as he objected to their being in his name. When he executed the first deed, he says, he supposed that both lots had been included in it, and that he never knew to the contrary until this suit was brought by the plaintiff. The second deed was not executed by the defendant for the premises where the accident happened, until after the plaintiff had fallen into the area-way and was injured, and not until after this suit was instituted. The second deed, like the former, contains a receipt for purchase money and guarantees and assurances of title. It is quite clear that if Haines caused the property to be conveyed to the defendant without his knowledge, and placed the deed on record without his consent, the defendant, under the circumstances of the case, could not be held responsible for the injuries resulting to the plaintiff from the accident. There can be but small doubt as to the motive of Haines in thus concealing the title of the property, and placing the same in the defendant.

The defendant, however, cannot be affected with a fraudulent delivery of the deed, any more than he can be held responsible for any other fraud, in the commission of which he has had no part. *Leppoc, et al. vs. National Union Bank of Maryland,* 32 *Md.*, 143.

But, after the defendant was informed of Haines' conduct, it then became incumbent upon him to take prompt

action for his own protection. Now, what did he do to accomplish this purpose? He says, he told Haines he would not consent to have the title remain in him, and thereupon Haines presented a deed for his execution, which he says, Haines told him included both lots; this Haines denies, and says, that he told the defendant that it was a deed for *one* of the houses, and again he says, he told him what the deed was. It is in proof that the defendant was a man of large business experience, especially in the purchase and sale of real estate, and yet with the knowledge that Haines had, without his assent, conveyed this property to him, he executes a deed, containing guarantees of title, &c., without ever reading it, to find out whether by executing the deed, he had divested himself of the ownership of the property, and released himself from all liability concerning it. It was, we think, the duty of the defendant when he became cognizant of the conduct of Haines, in seeking to place the title of the property in him, to have taken prompt steps to relieve himself from complications, which, under the circumstances, might be fairly expected to follow. It must have been apparent to the defendant that Haines was actuated by an improper motive in what he had done. In the ordinary transactions of life, men do not convey their real estate to strangers for the purpose of convenience.

We come now to the consideration of the prayers. The plaintiffs' fifth prayer was granted in connection with and subject to the defendant's second prayer. Standing by itself the plaintiffs' fifth prayer substantially embodies the law announced by this Court in *Irwin vs. Sprigg*, 6 *Gill*, 200, which has been approved in *Owings vs. Jones*, 9 *Md.*, 118, and in other cases. That which this Court said in *Irwin vs. Sprigg, supra,* is we think, equally applicable here: "The existence of an area, open and unprotected, like that described by the witnesses in

Condon *vs.* Sprigg.

this case, is an unauthorized and illegal obstruction of a public street in a populous city, of a most aggravated and dangerous character, and is therefore a public nuisance, yet as he (the defendant) subsequently became the owner of the house to which it belonged, the law imposed upon him the obligation to render it secure." The doctrine of this case was much criticized at the hearing in this Court. It was contended that the case found its only support in the case of *Coupland vs. Hardingham*, 3 *Camp.*, 398, where Lord ELLENBOROUGH had delivered the opinion of the Court, and that since then *Coupland vs. Hardingham* had been overruled in *Fisher vs. Prowse*, 2 *Best & Smith*, 770. However this may be, we think the doctrine announced in *Irwin vs. Sprigg*, is proper, under the circumstances shown by the record in this case, to be applied here.

As to the questions presented in the defendant's first and third prayers, they have received sufficient consideration, in what we have already said, and we think they were properly rejected, especially when taken in connection with the defendant's second prayer, which was granted, and gave the defendant all the law to which he was fairly entitled, respecting the ownership of the property in question. We think the rulings of the Court below were correct upon all the points raised by the prayers. The judgment must therefore be affirmed.

*Judgment affirmed, with costs.*

(Decided 12th January, 1894.)