## COMMONWEALTH CASUALTY COMPANY *v.* HARRY ARRIGO.

[No. 26, January Term, 1931.]

*Decided April 9th, 1931.*

The cause was argued before BOND, C. J., PATTISON, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Edward L. Ward,* with whom was *Foster H. Fanseen* on the brief, for the appellant.

*J. Cookman Boyd, Jr.,* with whom were *Herbert R. O'Conor, Charles C. DiPaula, J. Cookman Boyd,* and *Boyd & Boyd,* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

Charles R. Oliver, in April, 1926, became the purchaser of a White truck. Prior thereto he had purchased a truck from the International Harvester Company, and, in part payment therefor, had given to that company notes, containing power to confess judgment thereon. The truck, as claimed by Oliver, was defective, and he returned it to the company. Nevertheless, it seems, judgments were entered upon the notes, and were outstanding and in force against him at the time of his purchase of the White truck. Because of these judgments, Oliver, with the consent of Edward Malone, a friend, had the title to the truck placed in the latter's name, pending settlement of the controversy with the International Harvester Company. Oliver not wishing to operate the truck without first obtaining automobile liability insurance on it, application was made for, and on June 10th, 1926, insurance was obtained, from the appellant, the Commonwealth Casualty Company, in the name of Malone as owner of the truck.

On the 14th day of June, 1926, Oliver, while operating the truck, ran over Harry Arrigo, a child six years of age, crushing his left leg, necessitating an .amputation of it just below the hip.

The infant, Arrigo, by his father, sued both Malone and Oliver for the damage resulting from the injuries to Arrigo.

The Commonwealth Casualty Company assumed the burden and management of the defense. The first trial in November, 1928, resulted in a disagreement of the jury.

In November, 1929, a second trial was had, which resulted in a verdict against the defendants for $7,500. At both trials, prayers were offered on behalf of Malone to take the case from the jury, but were refused.

On January 15th, 1930, the infant appellee, Harry Arrigo, by his father, Ignatius Arrigo, brought suit, under the provisions of the policy of insurance, against the appellant, for the amount of the judgment, interest and costs, against Oliver and Malone, and judgment was recovered therein against the appellant, the Commonwealth Casualty Company. From that judgment, the appeal in this case was taken.

The questions presented by this appeal are: (1) Was the interest of Malone in the subject-matter of the policy of insurance issued to him sufficient to render the appellant liable thereunder for any loss or injury to him covered by the provisions of the policy, and (2) what effect, if any, did the alleged false warranty of sole ownership of the truck in Malone have, under the policy, upon the liability of the appellant?

In *Cooley's Briefs on Insurance*, vol. 1, page 145, it is said: "What constitutes an insurable interest in property has been the subject of much discussion. It is difficult to give a comprehensive and at the same time accurate definition. In the early history of insurance there was apparently a tendency to require title and ownership, or, at least, a substantial vested pecuniary interest, as a basis of insurable interest." But, as pointed out in *Riggs v. Commercial Mutual Insurance Company*, 125 N. Y. 7, 25 N. E. 1058, affirming [57 N. Y. Super. Ct. 78] 5 N. Y. S. 183, the tendency of recent decisions has been in the direction of a more liberal doctrine than formerly prevailed. It is no longer required that there shall be an absolute right of property in the subject of the insurance." And later on in the same work, under "Guaranty and Indemnity Insurance," page 237, of volume 1, it is said: "An insurable interest exists whenever there is a rea-

sonable degree of probability that the insured will suffer loss by reason of any contingency which affects the subject of the insurance (*Agricultural Ins. Co. v. Clancey,* 9 Ill. App. 137)."

A very clear statement of the law upon the subject under consideration is found in 14 *Ruling Case Law,* page 910, par. 87, where it is said: "The courts of this country, as well as of England, are well disposed to maintain policies where it is clear that the party assured had an interest which would be injured, in the event that the peril insured against should happen. The term interest, as used in application to the right to insure, does not necessarily imply property in the subject of insurance, and neither the title nor a beneficial interest is requisite. Although a person has no title, legal or equitable, in the property, and neither possession nor right to possession, yet he has an insurable interest therein if it is primarily charged in either law or equity with a debt or obligation for which he is secondarily liable." *Howard Ins. Co. v. Chase,* 5 Wall. 509, 18 L. Ed. 524; *Buck v. Chesapeake Ins. Co.,* 1 Pet. 151, 7 L. Ed. 90; *Phoenix Ins. Co. v. Hamilton,* 14 Wall. 504, 20 L. Ed. 729; note to *Mahoney v. State Insurance Co.* (Iowa) 9 L. R. A. (N. S.), page 490.

In deciding whether Malone had an insurable interest in the subject-matter of the policy, we are to consider the character of the insurance. In cases like the one under consideration, the character of insurance is quite different from fire insurance, where the insurance is against injury or loss by fire of the property insured, and where the assured should have some real interest in the property insured. In the case before us, the risk and hazard insured against is not the injury or loss of the property named in the policy, but against loss and injury sustained by others, caused by the use of the property therein named, for which the assured, as its titled owner, might be liable, and the right of the assured to recover does not depend upon his being the holder, in fact, of either a legal or equitable title in the property, but whether he, the holder of the title, as stated in the certificate of title

issued by the motor vehicle commissioner and in the policy of insurance, is primarily charged at law or in equity with an obligation for which he is liable.

Malone, though not the owner of the truck, gave to his friend, Oliver, permission to have its title placed in his name, which was done, and, thereafter, the insurance policy was issued in the name of Malone . This was done, as we have said, because of the controversy then existing between Oliver and the International Harvester Company The company, as claimed by Oliver, had wrongfully entered judgment against him upon notes given for a defective truck bought by him from it, which had been returned to the company. The controversy between Oliver and the company was subsequently settled, and the title to the White truck placed in Oliver's name and the policy of insurance assigned to him, but this was not until after the accident resulting in the injury to the infant, Arrigo.

Malone, in consenting to the title of the truck being placed in him, assumed the liability attached to an owner, and because of such liability was entitled to insure against the risks and hazard incident thereto This right was not dependent upon his being, in fact, the owner of the truck. *Condon v. Sprigg*, 78 Md. 330, 28 A. 395.

The conclusion reached as to the liability of Malone is, to say the least, largely justified by the fact that, in each of two trials, to which reference has been made, in which different judges presided, the liability of Malone was recognized by the instructions granted, and, in the last of these trials, a verdict was rendered by the jury against Malone, with Oliver, for the sum of $7,500, and a judgment entered thereon. An execution issued upon the judgment recovered against Malone and Oliver was returned unsatisfied, whereupon this suit was instituted by the infant plaintiff against the insurance company, under a provision of the policy authorizing the same upon such return of the execution.

In answering the second question, as to the effect of the alleged falsity of the representation or warranty, made in relation to the ownership of the truck, upon the validity of

the policy, we need only decide whether the untruthfulness or falsity thereof was known to the defendant company, for, if it was, and the policy was issued with the company's knowledge of its falsity and the premium thereon accepted, the validity of the policy was not thereby affected, even were we to hold that, without such knowledge, the policy would be vitiated by such representation or warranty. *Hartford Fire Ins. Co. v. Keating,* 86 Md. 130, 38 A. 29; *Goebel v. German Ins. Co.,* 127 Md. 419, 96 A. 627, 629; *Mutual Fire Ins. Co. v. Owen,* 148 Md. 257, 129 A. 214, 217; *Royal Ins. Co. v. Drury,* 150 Md. 211, 132 A. 635.

This court, in *Goebel v. German Ins. Co., supra,* said, speaking through Judge Urner: "It is a just and settled rule that an insurance company which issues a policy and collects the premium thereon, with actual or imputed knowledge that warranties contained in it are contrary to the real facts, will not be permitted to defeat recovery by the insured on the ground that the conditions thus stipulated did not exist. *Hartford Fire Ins. Co. v. Keating,* 86 Md. 130, 38 A. 29; *Dulany v. Fidelity & Casualty Co.,* 106 Md. 34, 66 A. 614."

It is clear from the evidence, as was held by the learned judge, sitting as a jury, in the trial of the case, that Wallace, a solicitor or local agent of the company, by whom the insurance was procured, knew the exact relations existing between Oliver and Malone in respect to the truck, and knew that Malone was not, in fact, its owner, but had consented to take title thereto for the reasons already stated, which facts were known to Wallace at, and before, the time the application was made, and before the policy was issued. Therefore, the only question remaining is, Was the knowledge of Wallace the knowledge of the company?

In *Goebel v. German Ins. Co. supra,,* Judge Urner, quoting from *Ann. Cas.* 1913A, 850, said: "An agent of the insurer whose duty it is to take or solicit applications for insurance, to forward such applications to the insurer for acceptance, to deliver the policy and to collect the premium, has frequently been held such an agent that knowledge as to matters affecting the risk or conditions of the policy acquired

by him while performing such duties will be imputed to the insurer"

In the earlier case of *Mallette v. British-American Assurance Co.,* 91 Md. 484, 46 A. 1005, quoted with approval in *Goebel v. German Ins. Co., supra,* the court said: "The insured deals with no one but the agent. The company cannot deal with its patrons in any other way. Justice and law therefore require that the company shall be held to sanction what the agent agrees to and upon which the insured relies." And it was said in *Mutual Fire Insurance Co. v. Owen, supra;* "Knowledge of matters affecting the risk or conditions of the policy required by the agent in soliciting the insurance is the knowledge of the company. 14 *R. C. L.* 1159; Ann. Cas. 1913A, 850."

In *Automobile Ins. Exchange v. Wilson,* 144 Md. 253, 124 A. 876, 877, a case very similar to the one before us, the appellee, Wilson, and a friend, agreed to buy a car together. The friend at the time had no money with which to pay his part of the purchase price, but the car was titled in the name of both. Thereafter, the appellee insured the car in his own name. At the time the insurance was taken out, the agent of the company was shown the title and knew the car was titled in the two names. This court there held, speaking through Judge Adkins, that "knowledge by appellant's agent of the condition of the title at the time the policy was written would constitute a waiver."

In this case, Wallace, the solicitor and local agent of the defendant company, was informed that the truck was the property of Oliver and not the property of Malone, and the reason for placing the title of the truck in the name of Malone was told to him, and he, in making out the application, knowing these facts, inserted therein the name of Malone as the sole owner of the truck. This constituted a waiver and rendered the defendant company liable under the policy. *Hartford Fire Ins. Co. v. Keating,* 86 Md. 131, 38 A. 29; *Royal Ins. Co. v. Drury,* 150 Md. 231, 132 A. 635; 26 *C. J.* 281; 14 *R. C. L.* 1159, sec. 340; *Eureka-Maryland Assurance Corp. v. Scalco,* 158 Md. 74, 148 A. 267.

The cases of *Loving, Adm'r., v. Mutual Life Ins. Co.,* 140 Md. 173, 117 A. 323; *Eagle, Star & British Dominions Ins. Co. v. Main,* 140 Md. 220, 117 A. 571; and *Stiegler v. Eureka Life Ins. Co.,* 146 Md. 629, 127 A. 397, are cited by the appellant in support of its contention. These cases differ widely from the case before us. In those cases, it was charged that the insurance was fraudulently procured, either by fraudulent concealment, or false statements, of material facts, unknown to the company or its agent, or, if known to the agent, he participated with the insured in the fraud perpetrated upon the company. In this case, that charge is not made against the assured, nor is there any evidence to support such charge. The relations between Oliver and Malone were fully made known to the agents of the company, and there was no effort on the part of the insured, with or without the aid of the agent, to defraud the company. It cannot be said that the arrangement affected by Oliver and Malone, and known to the agent, by which the title of the car was to be placed in the name of the latter, though not the real owner of the car, was made to defraud the company. The agent was consulted as to the validity of the policy when so made. They had no reason to believe that their inquiry as to its validity would not be submitted to the company for its acceptance, or that the proposed arrangement was not acceptable to the company. Whatever may be said as to the conduct of Oliver in placing the title in the name of another, because of the reasons assigned, which were made known to the agent of the company, it cannot be construed as an effort on his part to defraud the company. It is not shown, nor is it claimed, that the risk or hazard was in any wise increased or made greater by placing the title of the car in the name of Malone, and not in Oliver, and in taking the insurance in the name of Malone. In any event, this was done with the full knowledge of the agent of the company and not with the purpose or object of defrauding it. There were judgments against Oliver held by the International Harvester Company, the validity of which was questioned by Oliver, and, pending the controversy between them, it was thought best by Oliver not to place the

title of the truck in himself, thereby making it subject to executions upon those judgments. It does not necessarily follow, from the conduct of Oliver in so doing, that it was his intention to defraud the International Harvester Company, by avoiding the payment of a just debt, and that it was not his intention to defraud that company is more or less shown by the subsequent settlement of the controversy between them.

In the trial of the case three exceptions were taken to the rulings of the court on the admissibility of evidence. The first is to the court's refusal to admit in evidence the report of Oliver to the company as to the accident, in which Malone was said to be the owner of the truck; and the second exception is to the court's refusal to admit in evidence a written statement of Oliver and Malone in which it was stated that Malone was the sole owner of the truck. The only effect of the evidence, if admitted, would have been to tend to prove an admitted fact, as disclosed by both the certificate of title and the policy of insurance, and its rejection cannot be held to be a reversible error.

The court, sitting as a jury, refused all the prayers offered, those of the plaintiff as well as those of the defendant.

The defendant's A, B, and D prayers asked for a directed verdict. There can be no question from what we have said as to the correctness of the court's ruling upon these prayers. Its fifth and sixth prayers were predicated upon the contention of the defendant that Malone had no insurable interest in the subject-matter of the policy, which contention we have not been able to adopt; nor do we find any error in the court's ruling on the defendant's fourth prayer, which is also at variance with the views we have herein expressed. There was no discussion of defendant's first, second, third, fourth, and seventh prayers, but we discover no error in the court's refusal to grant them. The judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*

BOND, C. J., dissents.