**OHIO FARMERS INSURANCE COMPANY, and Ohio Farmers Indemnity Company, Ohio corporations, Plaintiffs-Appellees,**

v.

**Ezra LANTZ, Robert L. Lantz, Marie Yoder, Carol M. Yoder, Robert D. Myers, Imogene L. Myers, Elmer R. Miller, Betty Jane Miller, Defendants-Appellants.**

**No. 11984.**

United States Court of Appeals
Seventh Circuit.

June 27, 1957.

Rehearing Denied Aug. 6, 1957.

Charles W. Ainlay, Carl L. Chattin, Harry E. Vernon, Goshen, Ind., for appellants.

Roland Obenchain, Jr., South Bend, Ind., for appellee.

Before MAJOR, LINDLEY and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

This is an appeal from a judgment in favor of plaintiffs in an action for declaratory judgment. The judgment declared, in effect, that a 1947 Chevrolet automobile described in an insurance policy issued by plaintiffs was not covered by said policy on March 11, 1952, when the automobile was involved in a collision with another vehicle, and that plaintiffs, or either of them, are not liable under said policy to any of the defendants to make any payments, defend any actions, or pay any judgments by reason of said

collision. It was also adjudged that Carol M. Yoder, a defendant, take nothing by reason of her cross-complaint, in which she sought judgment against plaintiffs for $25,000 to apply on a judgment for $31,310 which she obtained against defendant Robert L. Lantz, in the Elkhart Circuit Court, Elkhart County, Indiana, for injuries sustained by her in said collision.

On the complaint and the cross-complaint, and answers thereto, the district court tried the case without a jury. Certain relevant facts were stipulated, and are, so far as relevant here, now stated.

On May 7, 1951, plaintiffs issued said policy insuring said automobile for one year against loss by collision and bodily injury and property damage liability. The named insured was stated as Ezra Lantz, described as the sole owner. On February 16, 1952, Ezra Lantz transferred and conveyed to defendant, Robert L. Lantz, all his right, title and interest in said automobile.

On March 11, 1952, while Robert was operating said automobile, the collision above referred to occurred in Elkhart County, Indiana, resulting in damage to the automobile. Defendants Yoder, Myers and Miller all sustained damages by reason of personal injuries and property damage, and filed suits thereon against the defendants Lantz; and defendant Carol M. Yoder recovered judgment against Robert as aforesaid.

Plaintiffs have refused to defend any actions or to pay any judgments rendered by reason of the above facts and have refused to pay collision loss or any bodily injury or property damage claims which have not been sued upon.

Relevant parts of the policy are now set forth below.

In the declarations on page 1, *inter alia,* there appear:

"Item 1.  Name of Insured  Ezra Lantz

"Item 5.  The purposes for which the automobile is to be used are Pleasure and Business

"Item 6.  Except with respect to bailment lease, conditional sale, mortgage or other encumbrance the Named Insured is the sole owner of the automobile, except as herein stated: Sole Owner"

In the insuring agreements on page 2, the following, *inter alia,* appear:

"I.  Coverage E–1—Collision or Upset:

"To pay for direct and accidental loss of or damage to the automobile, hereinafter called loss, caused by collision of the automobile with another object or by upset of the automobile, but only for the amount of each such loss in excess of the deductible amount, if any, stated in the Declarations as applicable thereto."

"Coverage H—Bodily Injury Liability:

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury,  *  * sustained by any person, caused by accident and arising out of the ownership, maintenance *or* use of the automobile."

"Coverage J—Property Damage Liability:

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance *or* use of the automobile."  (Italics supplied for emphasis.)

III. DEFINITION OF INSURED:

With respect to the insurance for bodily injury liability and for property damage liability the unqualified word "Insured" includes the Named Insured and also includes any person while using the automobile * * * provided the actual use of the automobile is by the Named Insured or with his permission. * * *

On page 4 appear the following conditions:

"20. Changes: Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy; nor shall the terms of this Policy be waived or changed except by endorsement issued to form a part of this Policy, signed by the President, a Vice President, Secretary, Assistant Secretary or Treasurer of the Company and countersigned by a duly authorized agent of the Company.[1]

Upon the trial in the district court it was established that Robert L. Lantz became 18 years of age on May 24, 1951, and Ezra Lantz testified, without contradiction, that, when the car was being purchased, he talked to Grace Blosser, plaintiff's agent, about the circumstances of Robert's age and the desire of having a policy. She thereupon issued the policy in Ezra's name and charged an additional premium. She was also told that the purchase of the car was financed at a local bank, where both Ezra and Robert signed a note. Thereafter Robert paid to Mrs. Blosser the premiums on this policy in monthly payments.

At the time of the accident, and prior thereto, Robert was living with his father and was under his supervision and control.

Finding No. 12 by the district court is as follows:

"On February 16, 1952, after the defendant, Ezra Lantz, transferred and conveyed all his right, title and interest in and to the 1947 Chevrolet automobile described in the insurance policy set out in Finding No. 2, he, Ezra Lantz, had no insurable interest in said automobile and on March 11, 1952, at the time of the collision, said policy did not apply thereto and said automobile was not insured thereunder."

The district court's conclusion of law No. 4 reads:

"The plaintiffs are entitled to a judgment on their complaint that the 1947 Chevrolet automobile described in the insurance policy set out in Finding No. 2 was not covered by said policy on March 11, 1952, and did not apply to the collision on March 11, 1952, and that the plaintiffs, or either of them, are not liable under said insurance policy to any of the defendants to make any payments, defend any actions or pay any judgments by reason of the collision of March 11, 1952."

It appears from the opinion filed by the district judge that he based his decision on the ground that the transfer by Ezra to Robert of the ownership of the car prevented the policy from covering the accident of March 11, 1952. It is apparent that he was led to that conclusion by finding of fact No. 12 that Ezra had no insurable interest in said automobile at the time of the collision.

---

[1] There is attached to the policy a rider entitled "Broad Coverage Endorsement". Included therein is the following:

"3. Insuring Agreement VIII—Policy Period, Territory, Purpose of Use.

"This Insuring Agreement is amended to read as follows:

Territorial Limits Extended

"This Policy applies only to accidents which occur and to direct and accidental losses to the automobile which are sustained during the Policy Period, while the automobile is in North America, or the territories or possessions of the United States of America, or is being transported between ports thereof, and is owned, maintained *and* used for the purposes stated as applicable thereto in the Declarations." (Italics supplied for emphasis.)

1. It is true that to support an action on a policy which insures a property right, i.e., against collision, fire, wind or theft, etc., an insurable interest in the named insured must be proved. On the other hand, where an insurance policy is one of indemnity against liability for loss and injury sustained by others and caused by the use of an automobile or other property named in the policy, an insurable interest in the named insured is not a prerequisite to a recovery against the insurer.

There is a marked difference between a contract of insurance against loss and one against liability. 44 C.J.S. Insurance § 24, p. 482; Slavens v. Standard Acc. Ins. Co., 9 Cir., 27 F.2d 859, 861; Michel v. American Fire & Casualty Co., 5 Cir., 82 F.2d 583, 586, and Ohio Casualty Ins. Co. v. Beckwith, 5 Cir., 74 F. 2d 75, at page 77, where the court, said that the distinction between these two types of insurance is of long standing and is well-recognized.

In the policy in the case at bar coverages H and J both embrace damages "arising out of the ownership, maintenance, *or* use of the automobile". (Italics supplied for emphasis.) Thus the policy recognizes and includes in its coverage, not only damages inflicted and arising out of the ownership or maintenance of the automobile, but also arising out of its use.

This coverage was afforded Ezra as the named insured. That coverage is extended, by the policy's definition of "insured", to include any person using the automobile with the permission of Ezra, the named insured. 45 C.J.S. Insurance § 829, p. 894. There is no doubt, and it is not denied, that permission was granted by Ezra to his minor son to use the car in question. There is no evidence that this permission was ever withdrawn, although up to and at the time of the collision the son was still a minor and was still living with and under the supervisory control of his father, Ezra. Ownership of the automobile either by the father or the son is irrelevant on the question of the liability risks assumed in this policy.

Moreover, all of the facts in regard to the purpose of the issuance of the policy to the father and not to the son were made known to plaintiffs' representative before the policy was written. In that respect, the language in Commonwealth Casualty Co. v. Arrigo, 160 Md. 595, 154 A. 136, 138, 77 A.L.R. 1250, is in point:

"In this case, Wallace, the solicitor and local agent of the defendant company, was informed that the truck was the property of Oliver and not the property of Malone, and the reason for placing the title of the truck in the name of Malone was told to him, and he, in making out the application, knowing these facts inserted therein the name of Malone as the sole owner of the truck. This constituted a waiver and rendered the defendant company liable under the policy * * *."

and, 154 A. at page 139:

"* * * It is not shown, nor is it claimed, that the risk or hazard was in any wise increased or made greater by placing the title of the car in the name of Malone, and not in Oliver, and in taking the insurance in the name of Malone. In any event, this was done with the full knowledge of the agent of the company and not with the purpose or object of defrauding it. * * *"

Such knowledge of an agent is attributable to the insurer. National Mutual Ins. Co. of Celina, Ohio v. Bales, 81 Ind. App. 302, 306, 139 N.E. 703, 704, 141 N.E. 481.

In Truck Ins. Exch. v. Hanson, 42 Wash.2d 256, 254 P.2d 494, where a liability insurance policy protected a father against any judgment secured against him arising out of the ownership, maintenance or use of a truck purchased by his minor son, it appeared that the agent of the insurer knew of the reasons for the naming of the father as the

insured. Following an accident while the son was driving, a suit for damages for injuries sustained by third persons was brought against the minor as well as his father, who tendered the defense of the action to the insurer. The trial court held the policy invalid upon the ground that the father did not have an insurable interest in the truck. The court said, 254 P.2d at page 495:

"* * * It is, therefore, immaterial whether he had a financial interest in it or not. The contingency against which the father is insured under the terms of the policy, is liability to third persons arising out of the ownership, maintenance *or* use of the truck. It is axiomatic that any one has a financial interest in protecting himself against liability arising out of the use of any instrumentality."

It was held that the trial court erred in ruling that the father had no insurable interest in the contingency described in the policy, meaning the liability to third persons. To the same effect is Commonwealth Casualty Co. v. Arrigo, supra, 154 A. at page 137. See also Mid-States Ins. Co. v. Brandon, 340 Ill.App. 470, 92 N.E.2d 540.

■ For the reasons aforesaid we hold that, so far as coverages H and J are concerned, the presence of an insurable interest in Ezra Lantz, at the time the policy was issued or at the time of the collision, was not essential to a recovery against plaintiffs and that the district court in that respect erred in its judgment.

2. In this court, defendants have not contended that plaintiffs are liable under the policy to either Ezra Lantz or Robert Lantz for loss of or damage to the 1947 Chevrolet automobile, resulting from the collision on March 11, 1952. Therefore, insofar as the judgment from which this appeal was taken pertains to such loss or damage to said automobile, that judgment is affirmed. In all other respects it is reversed and this cause is remanded to the district court to enter a judgment declaring the rights of the parties as herein determined, insofar as coverages H and J in the policy are concerned, and also a judgment in favor of cross-complainant Carol M. Yoder for $15,000, accrued interest thereon, and costs of suit. The district court, on remand, shall also consider cross-complainant's prayer for the allowance of reasonable attorneys' fees, and, if it determines that she is entitled to such allowance, it shall fix the amount thereof and include it in said judgment in her favor.

Affirmed in part, reversed in part and remanded with directions.